Not Recommended for Publication or Citation

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOHN W. PEROTTI, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 07-144-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DONALD STINE, Warden, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

**       **   **   **   **

John W. Perotti, who is confined in the Federal Correctional Institution-McCreary in Pine

Knot, Kentucky ("U.S.P.-McCreary"), has filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2241 and has paid the $5.00 filing fee for a habeas proceeding. The

matter is before the Court for screening.  28 U.S.C. §2243;  *Harper v. Thoms*, 2002 WL

31388736, *1 (6th Cir. 2002).

As Petitioner is appearing *pro se*, his petition is held to less stringent standards than those

drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190

F.3d 708, 715 (6th Cir. 1999).  During screening, the allegations in the petition are taken as true

and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  But

the Court may dismiss the petition at any time, or make any such disposition as law and justice

-1-

require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

For the reasons to be discussed below, the instant petition will be denied.

<u>CLAIMS AND FACTUAL ALLEGATIONS</u>

The Petitioner seeks to invalidate a prison disciplinary proceeding on the grounds that (1) the charges were brought in retaliation for his having filed for administrative remedies, a First Amendment claim; and (2) the proceedings were then conducted in violation of his due process rights under the Fifth Amendment of the United States Constitution. In support of these claims, the Petitioner has submitted a partially completed petition form, an attached memorandum of law, and additional documents which are attached and labeled from A through J. The following is a summary or construction of the information contained in these sources.

The Petitioner[1] begins with his transfer, in February 2006, from the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), to the USP-McCreary. He claims that the Bureau of Prison's ("BOP") stated reason for the transfer was that he was a medium-security prisoner who had been "mis-designated" to FMC-Lexington, a low-security facility. However, Petitioner contends, this purported reason "was not the case. I was then, and upon arrival to the USP McCreary a 'Low' Security prisoner." Perotti attaches a copy of his custody classification

---

[1]  While not relevant to the disposition of this case, the Court notes that Petitioner Perotti is no stranger to the courts. Westlaw research reports 34 citations to federal cases wherein John Perotti or John W. Perotti was a party, stretching from 1986 to the present. In *Perotti v. Marberry*, 2006 WL 1555962 (E.D. Mich. 2006) (slip op.), an action brought pursuant to 28 U.S.C. §1331 and the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the District Court set out his criminal and litigation background and noted, but did not rule on, the defendants' contention that Perotti had filed "many more" than 10 cases. Based on these cases, the defendants urged the application of 28 U.S.C. §1915(g) to revoke his *in forma pauperis* status, but rather than asking him to show cause why his pauper status should not be revoked, as requested, the Court found the matter mooted.

print-out, which the BOP ran a month later, on March 7, 2006. [Exhibit D]  It shows a "Low" security level for him and the following:  "INMATE/DESIG FACL LEVEL MISMATCHED, HAVE REGION ADD A MGTV."   Petitioner then apparently began filing for BOP administrative remedies with regard to the transfer.  He does not provide a copy of the first commonly used inquiry/grievance form for making requests to lower BOP staff, but he does attach the response which the Warden wrote when the Petitioner appealed the staff member's response.[2]  In one of the documents attached as Group Exhibit C, which bears a designation of Administrative Remedy No. 412928 and is dated June 13, 2006, the Warden states that he is writing in response to Perotti's May of 2006 inquiry into "why you were transferred to USP-McCreary."  *Id.*

In response to the inquiry, the Warden writes that the Petitioner's transfer was a Greater Security transfer and that after the Petitioner's arrival, his "Security Designation and Custody Classification Form was updated.  One of your Moderate severity incident reports could no longer be scored as it occurred more than twelve months ago . . . [and] so you were again classified as a Low security level inmate."  *Id.*  However, Perotti's change to Low security does

---

[2]  The administrative remedies available to inmates confined in Bureau of Prisons institutions are set out in the four-tiered Administrative Remedy Program, found at 28 C.F.R. §§542.10-.19 (1998).  Section 542.13(a) requires that an inmate first informally present his complaint or request to a staff member, thereby providing staff with an opportunity to correct the problem before filing a request for an administrative remedy.  This is commonly called a BP Form 8 ½.  If the inmate is still unhappy, he may appeal the first-level response, and at this point, the same forms and procedures are used not only for appealing inmate grievances or requests, but also for appealing disciplinary convictions.  If the inmate cannot informally resolve his complaint or wishes to appeal the matter further, then he may file a formal written request (a BP-9 form) to the Warden.  *See* §542.14(a).  If the inmate is not satisfied with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if still not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the BOP's Office of General Counsel.  *See* §542.15 (a) - (b).

not trigger another transfer back to a low-security facility, according to the Warden, who

explains the reasons as follows:

> Based on the current overcrowding in the Low security level institutions and the
> two Moderate severity incident reports you have incurred in the past 14 months,
> you will not be considered for transfer to a less secure facility at this time. A
> Population Management Variable (MGTV) has been requested. This MGTV is
> utilized in situations where population management causes placement outside the
> normal guidelines. You may request transfer consideration during your regularly
> scheduled program reviews, after serving twelve months at this institution with
> clear conduct.

*Id.*

Perotti appealed the Warden's June 13, 2006 response about Perotti's transfer to the third

of the BOP's levels of appeal, the Regional Director. In the Regional Director's response,

Perotti is described as "a Medium security inmate housed appropriately in a medium security

institution. . . . You have presented no evidence that your greater security transfer was

retaliatory." Ex. C, Response of Regional Director, dated July 18, 2006.

The National Office's response contains a recitation of the reasons for Perotti's transfer,

as originally given by the Warden and Regional Director, and makes the same conclusions,

including, "[w]e do not find, nor have you provided, any evidence to support your allegation that

your transfer to USP-McCreary was in retaliation of your protected First Amendment activities."

*Id.*, Response of Administrator of National Inmate Appeals, dated November 27, 2006. Perotti

thus concluded the administrative process with regard to his claim that the transfer was

retaliatory.

The rest of the Petitioner's allegations go to the disciplinary proceeding arising while the

transfer issue was being addressed administratively. He claims that an incident report was

written against him by a female case worker named Rice for the purpose of retaliating against him for writing the above-described administrative remedies and also for writing a separate administrative complaint against her.

With regard to the first of these purported reasons for her retaliation, the administrative challenge to his transfer to USP-McCreary, the Petitioner claims that the Regional Director's Office gave his appeal to Rice for her to investigate and to respond, and it was then that Rice realized that his points calculated his security to be low.  Therefore, on July 19, 2006, one day after the date of the Regional Director's response, she purportedly initiated disciplinary proceedings against him "with the sole motivation of increasing Petitioners [sic] security to justify retaining him at USP-McCreary."  Perotti also contends that she made sure that he was found guilty and re-evaluated his security that same day, all to make Petitioner into a medium-security inmate and "fit her response to the appeal."

With regard to Petitioner's second retaliatory theory for Rice's writing the July 19th incident report, Perotti contends that she wrote it because, on June 26th, he filed an administrative remedy against her.  Rice had sat on a Unit Disciplinary Committee ("UDC") convened on an incident report charging Perotti with having possession of another inmate's legal papers.  He does not supply a copy of that grievance or allege that he pursued it further, however.  He states only that afterwards, she purportedly told other prisoners that he could help them with filing Administrative Remedies and doing other legal work.  It is Petitioner's contention that her July 19th incident report, making "the same exact charges" as those against him in June,

constituted entrapment and was in retaliation for his writing the June 26th grievance about her. *Id.*

The purported trumped-up incident report which Rice wrote on July 19, 2006 (Ex. H), contains her allegations of an earlier instance of the Petitioner's wrongdoing as well as the triggering event of July 19th. She relates that the preceding month, on June 23, 2006, she had chaired a UDC on an earlier incident report written when Perotti had, similarly, been found in possession of another inmate's legal work. At that earlier time, she writes, she herself counseled and advised the Petitioner that he could not possess another inmate's legal work.

However, according to what Rice has written on the report, when she was performing an inspection of Petitioner's cell on July 19th, she found legal work belonging to another inmate, despite her earlier warning to the Petitioner. Therefore, she knew that he knew such possession was impermissible, and so she wrote the incident report at issue, charging Petitioner with Possession of Anything not Authorized and Refusing to Obey an Order of any Staff, BOP Code 305 and 307 offenses, classified as being of Moderate severity.[3]

The UDC part of the incident report shows that the Petitioner's initial response to the charge was to state, "This property belongs to me" (quotation marks in the original). It also shows the outcome of the charges. On July 20, 2006, a UDC found Perotti guilty of Possession of Unauthorized Items, the Code 305 offense, "by greater weight of evidence. Legal material

---

[3] The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C. F. R. §541.13, at Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

of other [inmates] can only be viewed in Library."  The UDC concluded that this Petitioner had violated the prison's rule by having official court documents from another inmate's case in his cell.  Petitioner was punished with the loss of 90 days of commissary privileges, "suspended 90 days clear conduct.  90 days will end 10/22/2006."  *Id.*

Perotti appealed the conviction in another Administrative Remedy.  In Administrative Remedy Number 422780, Petitioner insisted that he was not appealing the conviction but was requesting expungement, a declaratory judgment, and one million dollars.  Group Exhibits A-B. His initial ground was that Code 305 is void for vagueness, as it does not give fair notice of things which will be a violation.  He claims that the Code 305 was wrongly used to punish his possession of documents which are public documents and that the definition of the Code 305 offense did not contain a way to determine whether the document was owned by another prisoner or the accused – as public documents can be obtained through a court or the internet.  At some point in the administrative process, Petitioner also alleged that procedural errors occurred in the disciplinary process and that the UDC's decision was not based on the greater weight of the evidence.

These issues in Remedy No. 422780 were rejected at every level of the administrative hierarchy, and this Remedy was exhausted with the National Office's response of February 26, 2007.  The BOP officials consistently found that the required procedures were substantially followed; there was evidence to support the UDC's finding of guilt; and the sanctions were appropriate.

Two months later, on April 25, 2007, Perotti came to this Court with the current §2241 proceeding. He seeks expungement of the Code 305 possession conviction and a transfer back to a low-security prison.

## DISCUSSION

### Retaliation

"An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). To state a claim of retaliation for exercising that constitutional right, a claimant must show that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc).

The Petitioner in this action has actually presented two separate retaliation claims. He first claims that his transfer to USP-McCreary was retaliatory. Next, he claims that in bringing the Code 305 charges against him, Rice was retaliating for his filing administrative remedies – on the transfer issue and also about her personally.

However, as he did in the administrative process regarding the transfer, the Petitioner alleges retaliation without presenting allegations, evidence of, or circumstances suggesting a retaliatory motive in transferring him. The decision to transfer Perotti was made at FMC-Lexington, not at USP-McCreary. With regard to his transfer, the Court must agree with the BOP officials in Remedy No. 412928. Just as Perotti presented nothing in his administrative

-8-

appeals which would support his contention that his transfer from FMC-Lexington was for retaliatory reasons, he has failed to present herein any support for his claim that the move was retaliatory. Therefore, this retaliatory transfer claim will be dismissed.

Moreover, there is no indication of Case Worker Rice's personal involvement in the Petitioner's FMC-Lexington to USP-McCreary transfer. There is no indication that she even knew he was challenging the transfer in Administrative Remedy No. 412928. Nor is there any factual basis given for Petitioner's allegation that she penned the Regional Director's response. Even if Rice did know of these administrative proceedings and even if she wrote for the Regional Director, the Petitioner has failed to show why she would have been motivated to keep him at USP-McCreary and/or protect the personnel at another institution who made the complained-of transfer decision.

Further, even were the transfer retaliatory, the Sixth circuit has "repeatedly held that transfer from one prison to another prison cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Smith v. Yarrow*, 78 Fed.Appx. 529 (6th Cir. 2003) (collecting cases). Therefore, the Court finds that Petitioner fails to state a claim upon which this Court may grant relief with regard to his 2006 transfer being retaliatory.

Petitioner does attach copies of two grievances about his transfer about which Rice clearly did know, as he directed them both to her on June 23, 2006, and she answered him on July 1st. [Ex. E-F] In answer to Petitioner's inquiry into who made the transfer decision and his request for copies of the "Transfer Sheet prepared by Lexington FMC" and any recent security

level calculation, Rice responded that he could obtain copies of these documents by writing to the "FOI Office." In the other completed request/grievance form, he requested a transfer back to Lexington, and "[i]f this is not feasible, after you explain why it is not feasible, I request that I be transferred to Butner, NC or out West." Rice wrote back that to be eligible for requesting a transfer, he must complete 18 months of clear conduct and be more than 500 miles from home.

There is no further information on these inquiries. The Court assumes that the Petitioner did not appeal Rice's responses. Nor is there any allegation or indication in this record as to why the Petitioner would believe that briefly responding to the two transfer inquiries directed to her would raise her ire sufficient to bring charges against him. In short, as he did with the February of 2006 transfer issue, the Petitioner has broadly claimed retaliation without supporting facts.

Finally, the Petitioner has alleged that Rice brought the July 19, 2006 charges against him in retaliation for his filing the June 26th grievance/complaint against her. Perotti has not indicated that any action was taken against her or that he pursued his grievance about her up the BOP ladder to the National Office. Still, even if she was not sanctioned or embarrassed locally or nationally, it is conceivable that a person would be angry with just the filing of a complaint against her with her boss. A person might even be sufficiently angry to bring false charges.

However, the Petitioner did not raise this claim administratively. When he challenged his conviction on the Code 305 offense, he did not mention his current theory that Rice brought the Code 305 charges for a retaliatory motive. He focused only on his claims that the offense was void for vagueness, he was not able to present the documentary evidence he proposed, and the ultimate UDC decision was not supported by the greater weight of the evidence.

-10-

Federal prisoners are required to exhaust the BOP's administrative remedy process before filing a habeas corpus petition under 28 U.S.C. §2241. *See Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam). One of the reasons for the judicial exhaustion requirement is to prepare a record for the Court. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). Petitioner's own documentation shows that he complained of – and the BOP officials at each level responded to – only his due process claims. There is no mention of the word "retaliation" or the person named "Rice" or any other allegation going to an improper motive for why the charges were brought against him. Because the Petitioner apparently did not pursue his purported June 26th grievance against Rice through the administrative remedy system and did not raise the retaliation issue in his appeal of the Code 305 conviction, only his due process claims were exhausted in Administrative Remedy No. 422780. With nothing in the administrative record which shows that he challenged the disciplinary conviction on the ground that Rice brought the July charges against him to retaliate for his bringing the June grievance against her, he has raised a claim which was not exhausted and, therefore, it will be dismissed.

Conclusory allegations of retaliatory motive which are "unsupported by material facts will not be sufficient to state . . . a claim under § 1983." *Gutierrez v. Lynch,* 826 F.2d 1534, 1538-39 (6th Cir.1987); *see also Williams v. Bates,* No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec.2, 1994) (unpublished) (holding that the plaintiff's claim of retaliatory transfer was "wholly conclusory and so [was] insufficient to state a cause of action under § 1983"); *see Jones*

*v. Hood*, 2006 WL 1984274, at *8 (E.D. Mich. 2006) (not reported in F.Supp.2d 2006) (citing *Gutierrez* and *Williams*).

In summary, all of Petitioner Perotti's retaliation claims are without merit and will be dismissed.

<u>Due Process Claims</u>

The Petitioner's final claims go to purported violations of his due process rights in the conduct of the Code 305 disciplinary proceedings themselves. First, it is questionable that he had the due process rights which he claims. It is well-established that prison inmates possess a liberty interest in good time credits and the due process clause protects the loss or revocation of such credits. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974). However, it is doubtful that other forms of sanctions have the same protections. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (limiting the procedural due process protections only to a prisoner's punishment which "will inevitably affect the duration of his sentence" or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). *Id.* at 484.

The Petitioner's only sanction on his conviction for the medium security offense of possession of anything not authorized was the loss of 90 days' commissary privileges "suspended 90 days clear conduct. 90 days will end 10/22/06." It may be that he did not lose a single day at the commissary – if he had clear conduct until October 22, 2006. Courts have cited to *Sandin* and specifically held that the loss of commissary privileges affects no liberty interests and, thus, does not trigger procedural due process protections. *See Reynolds v. Williamson*, 197 Fed.Appx. 196, 198-99 (3d Cir. 2006) (not reported but citing to *Sandin* and

published circuit court opinions, including *Torres v. Fauver*, 292 F.3d 141, 150-51 (3rd Cir. 2002)); *Johnson v. Vroman*, 2006 WL 105497 (W.D. Mich. 2006) (not reported in F.Supp.3d) (same, citing circuit and lower courts' decisions).

However, the Petitioner suggests that the conviction harms him in that it means his security level is no longer at low and the conviction will postpone the time which he can move back to a low-security facility such as FMC-Lexington. Even so, he does not have a liberty interest in the level of facility in which he is imprisoned. The law is clear that inmates have no constitutional right to be incarcerated in any particular state institution and may be transferred at the discretion of state officials unless the state has created a liberty interest in remaining in a particular institution. *Olim v. Wakinekona*, 461 U.S. 239 (1983) (6,000 mile transfer); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976).

Relying on these holdings of the Supreme Court of the United States, the Sixth Circuit has written as follows regarding the transfer of prisoners from one institution to another:

> Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). 'Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it *is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all*.' *Meachum*, 427 U.S. at 228.

*Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995) (emphasis added), *cert. denied*, 116 S. Ct. 524 (1995).

-13-

In fact, the *Ward* Court found that a prisoner who is filing an extraordinary number of grievances and generating an extraordinary amount of litigation that results in an interference with prison administration, and which causes tension among staff members, and whose transfer is necessary to give prison staff a respite from a continuous barrage of grievances, may be transferred so long as the prisoner does not allege that his fundamental right of access to the courts or his fundamental right to petition for a redress of grievances has been impaired, and even when the facility to which he is transferred is less desirable than the facility from which he was transferred. *Id.* "[T]he fact that a prisoner may not like a certain prison location does not automatically transform a valid transfer into a constitutional violation." *Id.* at 275.

If Perotti's due process claims are addressed on the merits, they fail nonetheless. Perotti first alleges that the disciplinary offenses with which he was charged are void for vagueness because they grant "unbridled discretion" to the BOP to make rules without establishing any guiding principles for determining that the items belong to someone else. He cites no authority which agrees with him about the BOP's Code 305 or 307 offenses.

"It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357 (1983).

Therefore, the Courts inquire to see only if the law contains a "fair warning."  *See e.g.*, *Falkiewicz v. Grayson*, 110 Fed.Appx. 491 (6th Cir. 2004), *cert. denied*, 544 U.S. 1038 (2005). Further, in the context of prison regulations, "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions." *Meyers v. Aldredge,* 492 F.2d 296, 310 (3d Cir.1974).  Thus, "vagueness principles must be applied in light of the legitimate needs of prison administration."  *Id.* at 311.

Also, because legalistic wrangling over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the interpretation of those rules by prison authorities "unless fair notice was clearly lacking." *Hadden v. Howard,* 713 F.2d 1003, 1008 (3d Cir.1983) (quoting *Meyers,* 492 F.2d at 311).  Such cannot be said about the instant offenses of which this Petitioner was convicted.

Here, on its face, a Code 305 offense prohibits "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels."  28 C.F.R. §514.13, Prohibited Acts and Disciplinary Severity Scale, at Table 3.  Under the regulation, literally, possession of "anything" may be prohibited unless the item is authorized or directly issued to the prisoner.  This Court finds that the language of Code 305 is sufficient to provide "fair notice" to an inmate that he may be subject to disciplinary action and sanctions if he has in his possession any item which he knows is not authorized for him to retain.

Certainly, the prohibition of "anything" may apply to the legal papers of another inmate. The prison had a rule that a prisoner may not possess another inmate's papers except in the

prison library, and Inmate Perotti had papers which had not been given him through the BOP in his cell. Moreover, Case Worker Rice signed a written account of how she gave this Petitioner actual notice that a legal paper qualifies under Code 305 just the month before. He does not deny this assertion. To the contrary, he admits that the July charges were exactly the same as those in June.

Petitioner Perotti provides virtually no factual support for his broad claim that there were errors involving the violation of his due process rights in the way the disciplinary proceedings were conducted. The only specific complaint is that he was not able to present documentary evidence going to other locations from which he could have received legal materials. The Court has examined Exhibits I - J and finds that even if these offerings were rejected, there is nothing wrong in the UDC's refusal to consider them, as this "evidence" was of questionable value. Perotti had notice and an opportunity to make a defense, and his defense was quoted verbatim. He claimed that the confiscated papers were his, not another prisoner's, and the UDC found against him. Consistent with *Wolffe* and *Sandin,* the Petitioner received all of the process which he was due.

With regard to the evidence which the UDC did consider in addition to the Petitioner's defense, there were the confiscated papers and incident the report itself. The report contained Rice's version of events, which included her warning Perotti at the earlier proceeding that his possession of other inmates' work constituted a punishable Code 305 offense. She also wrote thereon the names of the other prisoners whose work she found in Petitioner's cell. Further, in describing the materials which she found, Rice wrote, "The legal work belonging to inmate De

-16-

Jesus has a raised seal imbedded in the paper from the Northern District of California," a document which did not come off the internet. [Ex. H]

Under *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985), there need be only "some evidence" to support the disciplinary decision. And "some evidence" is a lenient standard. *See also Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000). Therefore, a district court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes but merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support. *Superintendent,* 472 U.S. at 457. Even meager proof will suffice. *Webb*, 224 F.3d at 652.

The Court finds that the instant Petitioner's July 20, 2006 disciplinary conviction was supported by "some" evidence, and so, like his earlier claims, his due process rights were not violated. All of the Petitioner's due process claims are without merit. This case is most like the facts and consistent with the law in another district court's case in the Sixth Circuit. *See Ruth v. Hemingway*, 2002 WL 169388 (E.D. Mich. 2002) (not reported in F.Supp.2d).

## WARNING

The Petitioner is advised that only prisoners' disciplinary sanctions which affect good time credits or otherwise affect the length of his confinement are to be brought under 28 U.S.C. §2241. *Reynolds*, 197 Fed.Appx. at 199. *See also Tucker v. Carlson*, 925 F.2d 330 (9th Cir. 1991) (citing *Greene v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989); *Spina v. Aaron*, 821 F.2d 1126, 1128 (5th Cir. 1987); *Hassain v. Johnson*, 790 F.2d 1420, 1420-21 (9th Cir. 1986) (per curiam)).

-17-

Petitioner Perotti's sanction herein does not affect the duration of his confinement. His complaint is that the conviction keeps him a medium-security prisoner in a medium-security prison. It is essentially a conditions-of-confinement complaint. Therefore, to the extent that this Petitioner wishes to challenge any other sanctions imposed on him, *e.g.*, stays in segregation or the loss of visitation, telephone, or commissary privileges, the Court informs him that in the future he must file a civil complaint and pay the $350.00 district court filing fee.

CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

(1)    Petitioner John W. Perotti's §2241 petition for writ of habeas corpus is **DENIED**.

(2)    This action is **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

(3)    John W. Perotti is placed on notice that if in the future he should desire to file an action in District Court to challenge a disciplinary sanction which does not affect the duration of his confinement, he shall not be permitted to do so in a petition brought pursuant to 28 U.S.C. §2241, but he shall file a civil complaint which has a filing fee of $350.00.

This 9th day of May, 2007.



Signed By:

*Danny C. Reeves*

United States District Judge